**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA**

**VS.**                                                    **CASE NO: 6:22-cr-123-GAP-DCI**

**MICHAEL COURTNEY SHIRLEY**

**ORDER**

This cause came before the Court on the Defendant's Motions for New Trial (Doc. 93) and for Judgment of Acquittal (Doc. 94). The Court has also considered the Government's Responses in Opposition (Docs. 105, 106).

**I.      Background**

On August 10, 2022, a federal grand jury returned a five-count indictment against Michael Courtney Shirley ("Shirley" or the "Defendant"). Doc. 1. He was charged with one count of Conspiracy to Commit Honest Services Fraud under 18 U.S.C. § 1349, and four counts of Honest Services Fraud under 18 U.S.C. §§ 1346 and 1349. *Id.* at 1-7. The allegations against the Defendant stem from a contract he secured, through his company Praetorian Integrated Services, LLC ("Praetorian"), with the Seminole County Tax Collector's office beginning in 2017. *Id.* at 1-2.

A jury trial was held from July 24-27, 2023. *See* Docs. 71-83. The Government presented evidence at trial that the Defendant was part of a conspiracy with

Seminole County Tax Collector Joel Greenberg ("Greenberg")[1] by which he illegally obtained over $400,000 of taxpayer money. In addition to evidence of inflated invoices and kickback payments, the Government presented extensive witness testimony which showed that the Defendant did very little work in exchange for his lucrative contract. The Jury also heard testimony from Joseph Ellicott ("Ellicott")[2] describing the conspiracy, including his role in ferrying a $6,000 cash payment from the Defendant to Greenberg.

Prior to Ellicott testifying, the Defendant moved to exclude his testimony due to his intention to invoke his Fifth Amendment rights on a narrow subset of questions. The Court denied that motion. Then, after the Government introduced evidence of a purported sham loan agreement with extraneous handwriting on it, the Defendant moved for a mistrial, which the Court denied. Following the Government's case in chief, and again after closing arguments, the Defendant moved for a Judgment of Acquittal, which the Court also denied. The jury returned

---

[1] On May 14, 2021, Joel Micah Greenberg ("Greenberg") entered into a plea agreement to resolve extensive corruption and criminal activity during his time in office as the Seminole County Tax Collector from 2017-2020. *United States v. Greenberg*, 6:20-cr97-GAP-LRH, Doc. 105 (M.D. Fla. May 14, 2021). Greenberg sat at the helm of a broad conspiracy which personally yielded charges including one count of sex trafficking of a child, production of a false identification document, aggravated identity theft, wire fraud, stalking, and conspiracy to commit an offense against the United States. *See id.* at 1-2. At the time of his sentencing, Greenberg was ordered to pay restitution to Seminole County in the amount of $109,786.12 and to the United States Small Business Administration in the amount of $473,733.29. *Id.*, Doc. 183 at 7. Greenberg and his co-conspirators' flurry of criminal activity was remarkable in its broad scope, in its audacity, and in its cruelty. *See, e.g., id.* at 70-74.

[2] Ellicott pled guilty to his role in the conspiracy in 2022. *See United States v. Ellicott*, 6:22-cr-9-GAP-DAB-1, Docs. 22, 30, 62 (M.D. Fla. Oct. 11, 2022).

a verdict on July 27, 2023, finding the Defendant guilty on all five counts. *See* Doc. 83. He now renews his motions for Judgment of Acquittal and a motion for New Trial. *See* Doc. 93.

**II.    Analysis**

*A. Judgment of Acquittal*

**1. 18 U.S.C. § 1349—Conspiracy to Commit Honest Services Fraud**

When reviewing the sufficiency of the evidence on a motion for judgment of acquittal, the Court must draw all reasonable inferences in the light most favorable to the government. *U.S. v. Hernandez*, 433 F.3d. 1328, 1333 (11th Cir. 2005). "It is not necessary for the government to disprove every reasonable hypothesis of innocence, as a jury is free to choose among reasonable constructions of the evidence." *United States v. Foster*, 878 F.3d 1297, 1304 (11th Cir. 2018) (internal quotation marks omitted).

To sustain a conviction for Conspiracy to Commit Honest Services Fraud under 18 U.S.C. § 1349, the Government was required to prove to the jury beyond a reasonable doubt that (1) the Defendant and one or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit honest services fraud, and (2) that the Defendant knew the unlawful purpose of the plan and willfully joined in it. *See also* Doc. 78 at 15.

The Defendant contends that the Government failed to produce any evidence which could establish its prima facie showing of a conspiracy to commit honest services fraud, arguing that there was no testimony to show that the Defendant's contract or practice of significantly marking up invoices was improper. He argues that Ellicott's testimony regarding the existence of the conspiracy was self-serving and the text messages introduced into evidence were innocuous. Defendant avers that this evidence was insufficient for the Jury to convict.

The Government counters that it produced ample evidence from which the jury could find the Defendant guilty beyond a reasonable doubt. Doc. 106 at 1. The Court agrees. Testimony from multiple witnesses described the Defendant's long-standing relationship with Greenberg, which included serving as the latter's campaign manager in his run for Seminole County Tax Collector immediately prior to the launch of this conspiracy. These witnesses testified, and corroborating evidence showed, that the Defendant's company, Praetorian, existed only during the Defendant's time as a contractor for Seminole County. Further evidence showed that the Defendant was rarely, if ever, seen working in the office and that several employees did not understand what his professional role was.

The few professional responsibilities that the Defendant seemingly had were contracted out to third parties whose invoices were then inflated by the Defendant before being submitted to Seminole County. While one industry witness testified

that markups are not unusual as a general practice, he conceded the markups here were significant, though stopped short of judging a business decision he was not privy to. The defense's attempt to show—through its cross-examination of Mr. Skinner—that the inflated quantities of goods on these invoices were simply typos was similarly unconvincing in light of the evidence produced by the Government.

The Government also presented testimony linking the Defendant to a cash kickback payment made to Greenberg. This evidence included the testimony of Ellicott, who played the role of courier in the Defendant's $6,000 payment to Greenberg, in addition to text messages between the co-conspirators, bank records, and the testimony of the Defendant's former accountant. Ellicott testified that the Defendant tried to obfuscate this kickback by handing him a sham "contract" at the time to make it appear as if the Defendant were purchasing a share in Ellicott's business. However, he said the Defendant later decided to drop that plan and claim the cash payment was for purchasing furniture. The Defendant's former accountant had no recollection of any investment in Ellicott's business nor any transaction records that would support the unprecedented and irregular withdrawal of the $6,000 cash kickback.

The Government here has plainly introduced sufficient evidence from which the Jury could find the Defendant guilty of conspiracy to commit honest services fraud beyond a reasonable doubt. The Government submitted direct evidence in

the form of invoices, bank statements, transaction records, and witness testimony—in addition to substantial corroborating circumstantial evidence—from which the Jury could conclude that the Defendant was knowingly working with others to orchestrate a scheme to commit honest services fraud pursuant to his contract with the Seminole County Tax Collector's Office.

### 2. 18 U.S.C. §§ 1343 & 1346—Honest Services Fraud

To prevail on Counts II-V and convict the Defendant for honest services fraud, the Government was required to show beyond a reasonable doubt that (1) the Defendant knowingly devised or participated in a scheme to fraudulently deprive the public of the right to honest services of a public official through bribery or kickbacks; (2) the Defendant did so with an intent to defraud the public of the right to the honest services of a public official; and (3) in advancing, or furthering, or carrying out the scheme to defraud, the defendant transmitted, or caused to be transmitted, any writing, signal, or sound by means of a wire communication in interstate or foreign commerce. Doc. 78 at 17.

The bulk of the evidence for the first two elements was discussed above and likewise applies here. Moreover, the Government called witnesses and presented evidence showing that the payments here were made by electronic wire and were processed on out-of-state servers, satisfying the third element. The Defendant argued that the Government did not present any direct evidence to show that the

wire transfer in Count II was linked to any conspiracy. However, as explained in the Jury Instructions, direct evidence is not required for a conviction. *See* Doc. 78 at 4. There was ample circumstantial evidence for a jury to find that the $12,500 wire transfer on September 8, 2017—and, indeed, each of the payments in Counts II-V—were part of the broader conspiracy. *See U.S. v. Langford*, 647 F.3d 1309, 1320-22 (11th Cir. 2011).

### B. Motion for New Trial

The FRCP state that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial *if the interest of justice so requires*." Fed. R. Crim. P. 33(a) (emphasis added). "On a motion for a new trial based on the weight of the evidence, the court need not view the evidence in the light most favorable to the verdict. It may weigh the evidence and consider the credibility of the witnesses." *United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir.1985). "If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." *Id.* (internal quotations and citation omitted). However, "[t]he evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *Id.* at 1312-13.

The Defendant's disjointed and scantly supported[3] list of grievances can be distilled into two buckets: (1) the Court's rulings during *voir dire*; and (2) the Court's rulings regarding Government witness Ellicott. *See* Doc. 104. Because neither of these theories is persuasive and the Defendant's only attempt at showing manifest injustice is to meekly—and without support—state "the interest of justice requires Mr. Shirley be granted a new trial," his motion will be denied. *See* Doc. 93, ¶ 5.

### A. *Voir Dire* Rulings

"The decision to excuse a [prospective] juror for cause upon a suggestion of partiality is within the sound discretion of the trial judge." *United States v. Taylor*, 554 F.2d 200, 202 (5th Cir.1977).[4] The trial judge must consider whether the prospective juror "can confirm her ability to be fair and follow the [C]ourt's instructions on weighing the evidence presented." *United States v. Wiley*, 78 F.4th 1355 (11th Cir. 2023). However, the Eleventh Circuit "ha[s] recognized that there are few aspects of a jury trial where [it] would be less inclined to disturb a trial judge's exercise of discretion than in ruling on challenges for cause in [the] empaneling of a jury." *United States v. Lewis*, 40 F.4th 1229, 1242 (11th Cir. 2022).

---

[3] The Court notes that the Defendant has not ordered a transcript of the proceedings and consequently cites to no specific instances of error by the Court.

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

First, the Defendant argues that two jurors were improperly struck for cause—over his objection—simply because they "said something to the effect that they did not believe in the system or the laws." Doc. 93, ¶ 3.1. Defendant's reliance on nonbinding and inapposite authority from the Eighth Circuit is misplaced. *See id.* The Court reasonably, and within its discretion, struck two jurors who expressed disdain for the judicial system and an inability to fulfill the duties required of jurors in our system.

Next, the Defendant claims that the Court erred in denying his request to strike two other jurors for cause because of their bias. *Id.*, ¶ 3.2-3.3. While those jurors may have acknowledged some implicit bias, without a transcript the Court is unable to respond with specificity to the Defendant's unsupported allegations. However, in its recollection the Court inquired further of these jurors and, because they "could lay aside any opinion [they] might hold and render a judgment based solely on the evidence presented in court," dismissal was not required. *U.S. v. Rhodes*, 177 F.3d 963, 965 (11th Cir. 1999).

Finally, the Defendant contends that he should have been allowed additional peremptory challenges because the Court did not strike the above jurors for cause. Doc. 93, ¶ 3.4. Rule 24 of the Federal Rules of Criminal Procedure allows felony defendants ten peremptory challenges. Fed. R. Crim. P. 24(b)(2). This Court is granted discretion to allow additional peremptory challenges only in the case of

multiple defendants. *Id.* at 24(b). Because Shirley was the sole Defendant in this case and the Court did not err in denying his request to strike two prospective jurors for cause, he was entitled to no more than the ten peremptory challenges he received. *See id.*

### B. Ellicott's Testimony

Next, the Defendant complains that the Court committed error in allowing Ellicott to testify and in denying his objections to various aspects of that testimony. Doc. 93, ¶¶ 3.5-3.10. The Defendant also argues that the Court improperly denied his request to include a jury instruction permitting the jury to draw an adverse inference from Ellicott's having invoked his Fifth Amendment rights. *Id.* at ¶ 3.11. These arguments, which are supported by only one legal citation, are unpersuasive.

First, the Defendant contends that the Court erred in denying his motion to strike Ellicott as a witness because of his intention to assert his Fifth Amendment privilege against self-incrimination in response to questions about having sex with a minor. Doc. 93 at 3. While it is generally improper to call a witness solely for the purpose of invoking their privilege against self-incrimination, it is not improper where the privilege is asserted only to a narrow subset of questions. *See United States v. Feliciano-Francisco*, 701 F.App'x 808, 813-14 (11th Cir. 2017) (citing *United States v. Lacouture*, 495 F.2d 1237, 1240 (5th Cir. 1974)[5]). Indeed, "once the trial court has

---

[5] *See infra* note 3.

satisfied itself as to the validity of the witness's Fifth Amendment claim," it may exercise its discretion in determining whether to allow the witness to take the stand. *Id.* at 814 (quoting *United States v. Bowman*, 636 F.2d 1003, 1013 (5th Cir. 1981)[6]).

Additionally, the Sixth Amendment guarantees criminal defendants the right to impeach adverse witnesses through cross-examination as to any motivation for bias and, "[w]here the witness is a chief government witness, the right to full cross-examination increases in importance." *United States v. Barrington*, 648 F.3d 1178, 1188 (11th Cir. 2011). This right is not unlimited, however, and the "Sixth Amendment is satisfied so long as a defendant is permitted cross-examination which exposes the jury to facts sufficient to evaluate credibility of the witness." *Id.* "As long as sufficient information is elicited from the witness from which the jury can adequately assess possible motive or bias," there is no violation of this right. *United States v. Orisnord*, 483 F.3d 1169, 1179 (11th Cir. 2007).

First, like the witness in *Feliciano-Francisco*, Ellicott provided candid, significant, wide-ranging, and relevant testimony, which included addressing his potential biases and motivation for cooperation. *See* 701 F.App'x at 814. It was only on the narrow issue of allegations regarding sex trafficking of a minor—which do *not* have a direct bearing on the Defendant's charges—that Ellicott asserted his constitutional privilege. Moreover, he conceded openly and thoroughly fact that he

---

[6] *See infra* note 3.

provided information to the government in hopes of receiving a more favorable sentence. Likewise, he acknowledged that, at the time of the trial, his sentence was nearing completion so he had little incentive to provide any further assistance to the Government. Ellicott provided extensive, probative testimony regarding the facts of the case and did not assert the privilege to many of the defense counsel's questions intended to illustrate his biases. The Court reasonably exercised its discretion in allowing Ellicott to testify. *See Feliciano-Francisco*, 701 F.App'x at 814.

Secondly, Ellicott, as a chief government witness, was subjected to extensive cross-examination. After the Defendant bombarded Ellicott with fifty questions about alleged illicit sexual activity—each of which he answered by invoking his Fifth Amendment privilege—it is hard to imagine the jury having any impression other than that Ellicott has received favorable treatment from the Government with regards to sex trafficking allegations, for which he may well be guilty. When considering Ellicott's substantial testimony in conjunction with this episode, there can be no question that the jury were exposed to "facts sufficient to evaluate his credibility as a witness." *Barrington*, 648 F.3d at 1188. The Defendant's extensive cross-examination of Ellicott was sufficient to satisfy the mandate of the Sixth Amendment. *See Orisnord*, 483 F.3d at 1179.

Next, the Defendant makes four evidentiary arguments without a single citation to the record or any legal authority. *See* Doc. 93, ¶¶ 3.7-3.11. First, Ellicott

properly authenticated the fake loan document by testifying to his knowledge of and familiarity with the document and that "it [wa]s what it [wa]s claimed to be." Fed. R. Evid. 901(b). Ellicott testified about his mother's writing based on his knowledge and familiarity with the document in response to direct and cross-examination.

At a bench conference during the trial, the Court heard defense counsel's motion for mistrial based on the fact that it had been unaware that the handwriting on the fake loan document belonged to Ellicott's mother and therefore constituted a *Brady* violation. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963).[7] Counsel for the Government made clear—and defense counsel did not contest—that it turned the document over at a reverse proffer before charges were even filed and that it only learned of the handwriting's source during final trial preparations. At the time it responded to the Defendant's query regarding the source of the handwriting, the Government truthfully answered that it did not know. The Court rejects the Defendant's contention that any *Brady* violation occurred. The Defendant was charged, in part, for his role in bribing Greenberg as part of a conspiracy to commit honest services fraud. A simple filing notation on a sham loan agreement referring

---

[7] Under the Supreme Court's holding in *Brady*, "suppression by the prosecution of evidence *favorable to an accused* upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 1196-97 (emphasis added).

to the central figure of the conspiracy surely does not constitute material evidence of a co-conspirator's innocence.

The Defendant next insists that the Court erred in declining to sustain his objections to Ellicott's testimony regarding alleged hearsay statements made to him by Greenberg. Doc. 93, ¶¶ 3.9-3. However, as the Government correctly points out, statements of a co-conspirator made in furtherance of the conspiracy are not considered hearsay. Fed. R. Evid. 801(d)(2)(E). The Defendant's argument that this rule did not apply because a conspiracy had not yet been proven fails on its face and requires no further elaboration.

The Court likewise properly excluded recordings of jail calls between Greenberg and Ellicott that the Defendant attempted to introduce. *See* Doc. 93, ¶ 3.10. Evidence is relevant if "it has any tendency to make a [material] fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. However, if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, or wasting time it may be properly excluded. *Id.* at 403. This determination lies "within the sound discretion of the trial judge." *U.S. v. Beechum*, 582 F.2d 898, 915 (5th Cir. 1978).[8]

At the close of the second day of trial, defense counsel stated they would extract and highlight portions of the jail calls for the Court's review which were

---

[8] *See infra* note 3.

relevant to the Defendant's theory that he was setup by Greenberg and Ellicott. Instead, defense counsel returned the following morning with no abstract or redacted version of the jail calls and again requested to play them in their entirety, despite acknowledging that there was nothing in them which showed the conversants were conspiring to setup the Defendant. The Government objected to their introduction on the grounds that they were neither relevant nor valid impeachment, noting that the proper foundation would need to be laid because Ellicott was testifying. *See* Doc. 105 at 14; *see also* Fed. R. Evid. 803-804. The Court, acting within its discretion, determined that the jail calls were neither sufficiently relevant nor valid impeachment and properly excluded them.

Finally, the Defendant contends that the Court erred in denying his request for a special jury instruction explaining that the jury was permitted to draw an adverse inference against Ellicott because he invoked his Fifth Amendment rights. *See* Doc. 93, ¶ 3.11; *see also* Doc. 75. As the Government recognized, the authority cited to by the Defendant is distinct from the instant matter and, moreover, is not binding on this Court. *See U.S. ex. rel. DRC, Inc. v. Custer Battles, LLC*, 415 F.Supp.2d 628 (E.D. Va. Feb. 13, 2006). Most importantly, the instant case is criminal—not civil—in nature, and no case law has been presented to indicate such an instruction would be proper here.

The Court's Final Jury Instructions plainly informed the jury that they could consider past convictions involving dishonesty, that they should ask themselves whether witnesses have particular reasons for not telling the truth or have personal stakes in the outcome of the case, and—most importantly—that Ellicott made a plea deal and "may have reason to make a false statement in order to strike a good bargain with the Government." *Id.* at 5, 6, 8. Coupled with the Court's acquiescence to defense counsel's fifty questions, which elicited fifty invocations of Ellicott's Fifth Amendment rights, these instructions made it crystal clear to the jury that they were permitted to draw an adverse inference against Ellicott. The Defendant's requested jury instruction was properly excluded.

### III. Conclusion

Accordingly, it is **ORDERED** that the Defendant's Renewed Motion for Judgment of Acquittal and Motion for New Trial are hereby **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on October 4, 2023.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

United States Marshal
United States Attorney
United States Probation Office
United States Pretrial Services Office
Counsel for Defendant